*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DERRICK AMIR GOLDEN,

      Defendant-Appellant.

UNPUBLISHED
July 22, 2026
10:32 AM

No. 368095
Muskegon Circuit Court
LC No. 2021-005110-FH

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of possession with intent to deliver fentanyl (450 grams or more but less than 1,000 grams) and possession with intent to deliver cocaine (450 grams or more but less than 1,000 grams), MCL 333.7401(2)(a)(*ii*). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 15 to 50 years' imprisonment for each conviction.

On appeal, defendant challenges the trial court's denial of his pretrial motions to suppress evidence seized pursuant to a search warrant and to preclude the admission of other-acts evidence under MRE 404(b). He also contends that the prosecutor committed error, that trial counsel rendered ineffective assistance, and that the trial court improperly qualified a police officer as an expert witness and permitted impermissible drug-profile testimony. Defendant further argues that the cumulative effect of those purported errors deprived him of a fair trial. Finally, he seeks resentencing on the basis that the trial court sentenced him pursuant to an impermissible sentencing policy and in violation of the principle of proportionality. We affirm defendant's convictions but vacate his sentences and remand for resentencing.

## I. BACKGROUND

This case began when officers on the West Michigan Enforcement Team (WEMET), a multijurisdictional task force concerned with drug offenses and fugitive apprehension, attempted to locate defendant on an unrelated misdemeanor warrant. In September 2021, WEMET Officer Cody Merkins found an August 2021 police report indicating that Kaleesha Curry was driving a Dodge Charger registered to defendant, who was dating Kaleesha's mother, Shekela Curry.

-1-

Officers then began investigating 1641 Huizenga, Shekela's and Kaleesha's address, as a possible address for defendant. Officer Merkins saw defendant's Charger parked outside the residence on multiple occasions over the following month but did not observe defendant there until October 20, 2021.

The following day, officers saw defendant leave the residence in his Charger. A traffic stop was subsequently initiated. After defendant was removed from his car and his hands were cuffed behind his back, the arresting officer recovered a bag of crack cocaine on the ground near defendant's feet. The officer later reviewed his dashboard camera footage and determined that the drugs were not on the ground when he arrived. He also recovered over $2,000 in small denominations from defendant's person. Lottery tickets, which are frequently folded into "bindles" and used to traffic drugs, were found scattered throughout the car.

Based on those observations and information developed during the investigation, officers then obtained a warrant to search the Huizenga residence. During the execution of that warrant, officers recovered large quantities of fentanyl and cocaine from various locations within the home, including a bedroom and closet that contained evidence connecting defendant to the residence. That evidence included a letter addressed to defendant—albeit at a different address—and men's clothing in sizes 3XL and 4XL, which was consistent with the size of clothing defendant was wearing at the time of his arrest. He was subsequently charged with the instant offenses.

Before trial, defendant moved to suppress the evidence recovered from the residence, arguing that the search warrant failed to establish a sufficient nexus between the alleged criminal activity and the home. The trial court denied the motion. After the prosecution provided notice of its intent to admit evidence of two prior drug-related arrests of defendant under MRE 404(b), defendant also moved to exclude that evidence. The trial court denied that motion as well.

Following a jury trial, defendant was convicted as described above. His sentencing guidelines minimum range was calculated at 171 to 570 months' imprisonment for each offense. The Department of Corrections agent who prepared the presentence investigation report recommended below-guidelines sentences of 135 to 138 months for each conviction. At sentencing, the trial court noted the below-guidelines recommendation and stated, "I don't sentence below the guidelines. So I can't follow the recommendation in this case." The trial court then sentenced defendant to within-guidelines sentences of 180 to 600 months' imprisonment for each conviction. This appeal followed.

## II. DISCUSSION

## A. SEARCH WARRANT

Defendant first challenges the denial of his motion to suppress the evidence obtained pursuant to the search warrant. In the trial court, he argued that he was entitled to suppression because the warrant failed to establish a nexus between the home and the evidence sought and therefore failed to supply a substantial basis for inferring a fair probability that evidence of a crime would be found in the home. The trial court found that defendant lacked standing to challenge the warrant because he denied any ownership or possessory interest in the residence or the items found there, and on that basis, the court denied the motion to suppress.

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation" and review for clear error any underlying factual findings made during the suppression hearing. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (citation omitted). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted). "We review de novo the issue whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies." *Id*. "Whether a party has standing is a question of law that is reviewed de novo." *People v Grabowski*, 274 Mich App 174, 178; 731 NW2d 466 (2007).

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021); see also US Const, Am IV; Const 1963, art 1, § 11. "[R]easonableness is always the touchstone of Fourth Amendment analysis . . . and the general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020) (quotation marks and citation omitted).

"A search warrant may only be issued upon a showing of probable cause," which "exists if there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place." *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). A reviewing court must read the search warrant and incorporated affidavit in a "common sense and realistic manner," giving "great deference to [the] magistrate's finding of probable cause." *People v Mullen*, 282 Mich App 14, 21, 27; 762 NW2d 170 (2008) (citation omitted). We therefore "do not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit. Rather, this Court need only ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. at 21 (quotation marks and citation omitted). If a warrant is issued in violation of the Fourth Amendment, the resulting evidence must be suppressed. *Mahdi*, 317 Mich App at 457.

"The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v United States*, 584 US 395, 410; 138 S Ct 1518; 200 L Ed 2d 805 (2018). "For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "A court determines the issue of standing by evaluating the totality of the circumstances, and a defendant bears the burden of establishing that he has standing." *Mahdi*, 317 Mich App at 459. Relevant factors include

> ownership, possession, and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. (citation omitted).]

Overnight guests at a residence have a legitimate expectation of privacy sufficient to confer standing to challenge a search of that residence. *People v Parker*, 230 Mich App 337, 340; 584 NW2d 336 (1998). Mere visitors and persons present for business transactions do not have standing to challenge a search. *Minnesota v Carter*, 525 US 83, 90-91; 119 S Ct 469; 142 L Ed 2d 373 (1998).

In this case, defendant argued in his motion to suppress that there was no evidence he lived or frequently stayed at 1641 Huizenga and that officers had only seen his vehicle outside of the residence on two previous occasions. At the hearing on that motion, defendant argued—albeit in the context of an unrelated motion to quash—that police "did not find any proof of residency such as anything in [defendant's] name, such as any electric bills, gas bills, nothing in his name as to regarding cable," and "there is nothing to tie [defendant] to that residence."

After the trial court denied the motion to quash, defendant argued "for purposes of the [suppression] motion . . . that there was evidence . . . that he did reside at that house," including the letter addressed to him found at the house and clothing in a size similar to his. The trial court asked, "Is your client saying that's not my house and that I don't live there and nothing there is mine?" Defense counsel responded, "Yes, Your Honor. He's not admitting that that was his house or his clothing." For that reason, the trial court found that defendant lacked standing to challenge the search.

On appeal, defendant contends that finding was erroneous, relying on trial testimony that he had a key to the residence, that male hygiene products and a letter addressed to him were found therein, that he kept clothing and personal items at the home, and that he stayed there three to four times per week. But this Court's review of a trial court's findings at a suppression hearing is limited to the evidence presented at the hearing. *People v Hammerlund*, 504 Mich 442, 450; 939 NW2d 129 (2019); *People v Kaigler*, 368 Mich 281, 288; 118 NW2d 406 (1962). Of the evidence defendant highlights on appeal, the trial court was presented only with the letter addressed to defendant—though at a different address—and the clothing in his size found at the home. Moreover, defendant expressly disclaimed ownership of the clothing at the hearing.

On this record, the trial court did not err by concluding that defendant lacked standing to challenge the search warrant. Apart from clothing whose ownership defendant disclaimed, the only evidence defendant presented connecting himself to the residence was the letter addressed to him and the fact that his car was seen at the residence on multiple occasions before the warrant was sought. That evidence supports an inference that defendant was merely a visitor, not an overnight guest or resident with a legitimate expectation of privacy in the home. Defendant therefore failed to meet his burden of establishing standing to challenge the search warrant, and the trial court did not err by so finding.

Even if defendant had established standing to challenge the search, he would not be entitled to suppression because the warrant was supported by probable cause. "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). "When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs." *Id*. "The affiant may not draw his or her own inferences, but must state the matters that justify the drawing of

-4-

inferences." *Id*. Reviewing courts afford great deference to a magistrate's determination of probable cause, resolving marginal cases in favor of sustaining the warrant. *People v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992).

Incorporated into the search warrant at issue is an affidavit signed by WEMET Detective Kaleb Gilbert. In that affidavit, the detective averred that defendant was dating Shekela, the owner of 1641 Huizenga, and that defendant's Charger was observed parked outside the home on October 20, 2021, the day before the search warrant was sought. The affidavit detailed defendant's nine previous narcotics convictions, including convictions for delivery and manufacturing of narcotics in 1993, 2000, 2014, 2015, and 2020. It further detailed defendant's arrest on October 21, 2021, after he was observed leaving 1641 Huizenga, and it explained that a bag of crack cocaine was recovered during a search incident to that arrest. Detective Gilbert averred that, based on his training and experience, "individuals involved in the sale or storage of illegal controlled substances will commonly hide controlled substances and/or the proceeds from the sale of controlled substances in their residences."

The affidavit supplied a substantial basis for concluding that evidence of drug trafficking would likely be found at the home. Officers identified that address as a location associated with defendant through their investigation and thereafter observed both defendant and his car at the residence on multiple occasions. Defendant was seen leaving the residence immediately before the traffic stop that led to the discovery of the crack cocaine near his feet. The temporal proximity between his departure from the residence and the discovery of the narcotics reasonably supported an inference that the drugs originated from that location. Moreover, the crack cocaine and large amount of cash recovered during the traffic stop, combined with defendant's documented history of narcotics trafficking, supported an inference that he was engaged in narcotics dealing. The facts associating him with the residence reasonably supported an inference that he either resided in or frequented the home, and the officer's training and experience supported a reasonable likelihood that illegal drugs would be found there.

Defendant criticizes Detective Gilbert's reliance "on his training and six years of experience as a police officer to support the conclusory claim that individuals who sell drugs keep evidence of drug trafficking in their home." But Michigan courts have repeatedly recognized that an officer's training and experience may properly be considered when evaluating probable cause and that it is reasonable to infer that drug traffickers often keep evidence of their criminal activity in their residences. See, e.g., *People v Nunez*, 242 Mich App 610, 614; 619 NW2d 550 (2000); *People v Darwich*, 226 Mich App 635, 640; 575 NW2d 44 (1997). Although an officer's experience alone cannot establish probable cause, the magistrate was entitled to consider Detective Gilbert's expertise together with the other facts set forth in the affidavit in making a probable-cause determination.

Considering the totality of the circumstances, the affidavit established: (1) defendant's connection to the residence; (2) his immediate departure from the residence before being found in possession of crack cocaine; (3) his extensive history of narcotics trafficking; and (4) the affiant's experience regarding where drug traffickers commonly store evidence. Those facts were sufficient to create a fair probability that evidence of narcotics trafficking would be discovered within the residence. Accordingly, the magistrate had a substantial basis for finding probable cause, and defendant is not entitled to suppression of the evidence obtained from the home.

## B. OTHER-ACTS EVIDENCE

Next, defendant asserts that the trial court abused its discretion by admitting other-acts evidence concerning two prior arrests in 2000 and 2020. We review preserved challenges to a trial court's decision to admit evidence for an abuse of discretion but review de novo "[p]reliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Further, "it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Bynum*, 496 Mich at 623.

The admissibility of other-acts evidence is governed by MRE 404.[1] "The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). Other-acts evidence may, however, be admissible under former MRE 404(b)(1), which provides for the admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." *Denson*, 500 Mich at 397.

MRE 404(b) is inclusionary, not exclusionary, "because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). Our Supreme Court in *People v Sabin*, 463 Mich 43; 614 NW2d 888 (2000), articulated the following approach courts employ when evaluating other-acts evidence:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*Sabin*, 463 Mich at 55-56 (quotation marks and citation omitted; alteration in original).]

In this case, the prosecution sought to admit as other-acts evidence testimony regarding two prior arrests of defendant in 2000 and 2020, respectively. Concerning the 2000 arrest, the prosecution asserted that defendant had crack cocaine concealed in his underwear, which was consistent with the prosecution's theory that the drugs found near defendant's feet during the instant arrest had been concealed in his underwear before they were found on the ground. Defendant also had a large amount of cash in small denominations during the 2000 arrest, similar to the instant arrest. Defendant argued that the evidence would be more prejudicial than probative.

---

[1] Our Supreme Court adopted amendments to the Michigan Rules of Evidence effective January 1, 2024. Administrative Order No. 2021-10, 512 Mich lxiii (2023). Citations and references to the Rules of Evidence in this opinion refer to the rules in effect in June 2023 when the case was tried.

The trial court concluded that the 2000 arrest was admissible under MRE 404(b), noting the similarities in the manner of concealment and the currency found during both arrests.

Regarding the 2020 arrest, the prosecution contended that defendant was found with methamphetamine and a large amount of cash in small denominations consistent with the cash found during the instant arrest. The prosecution also noted that a size 5XL coat was found in the backseat of defendant's vehicle, which was consistent with the size of the men's clothing found at 1641 Huizenga. Defendant argued that the 2020 arrest resulted from a dispatch call regarding shots fired, not from the execution of a search warrant like in the instant case, and therefore was not relevant. The trial court found the 2020 arrest admissible under MRE 404(b), highlighting the coat's size and the cash as "closely connect[ing]" the offenses.

On appeal, defendant maintains that the other acts were offered only to portray him as a habitual drug dealer. He asserts that the similarities between the prior incidents and the charged conduct were too generic to justify admission and that the prejudicial effect substantially outweighed any probative value. We disagree.

To sustain a conviction for possession with intent to deliver under MCL 333.7401(2)(a)(*ii*), the prosecution must prove beyond a reasonable doubt, among other things, that the defendant possessed the illicit substance knowingly and with the intent to deliver. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005); MCL 333.7401(2)(a)(*ii*). Those elements required the prosecution to prove that the defendant, and not someone else, possessed the illicit substance with the intent to distribute it. Unlike cases in which intent is readily inferable from undisputed possession, the central issue here was whether defendant possessed the crack cocaine found near his feet during the traffic stop and the narcotics recovered from 1641 Huizenga during the subsequent search warrant. Defendant denied any connection to the narcotics and disputed that the bedroom in which most of the drugs were discovered belonged to him. Thus, knowledge and intent were genuinely contested issues.

The other acts were relevant to those issues. Evidence that defendant concealed illicit substances in his underwear during the 2000 arrest was relevant to the prosecution's theory concerning the crack cocaine found near defendant's feet in the instant arrest. During both the 2000 and 2020 arrests, defendant was in possession of a large amount of cash in small denominations—as he was at the time of his arrest in 2021—which the prosecution contended was evidence of drug trafficking. And the 5XL coat found in the backseat of defendant's car during the 2020 arrest was relevant because it connected defendant to similarly sized clothing found in the bedroom from which the bulk of the narcotics were recovered.[2]

Under *Sabin*, evidence of prior acts may be admitted to establish a common scheme, plan, or system when the charged conduct and the prior acts contain sufficient common features to support an inference that they are manifestations of the same general system. *Sabin*, 463 Mich

---

[2] We acknowledge the other clothes recovered were reported as 3XL and 4XL, and the jacket was 5XL. We note these garments were for persons of substantial size and were undergarments or shirts. An outer garment one or two sizes larger is not inconsistent with belonging to the same person.

at 63-66. The acts need not be identical. *Id*. at 65-66. Here, the other acts were similar to the prosecution's theory of the instant offenses not merely because defendant possessed drugs on those prior occasions. Rather, the other acts involved, and the instant offenses involve, the possession and concealment of narcotics, combined with substantial amounts of cash in small denominations consistent with drug trafficking. Those common features supported an inference that the charged conduct was part of the same recurring pattern of drug-trafficking activity.

The evidence was also admissible to establish defendant's knowledge and intent. Because defendant disputed ownership and possession of the narcotics recovered during the traffic stop and from the residence, the prosecution was entitled to present evidence tending to show that defendant's association with the drugs was not accidental or innocent. See *People v VanderVliet*, 444 Mich 52, 79-80; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Nor was the admission of the evidence precluded by MRE 403. Although the other acts were undoubtedly prejudicial, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (citation omitted). The other acts were highly probative of the principal disputed issues in this case—knowledge, possession, and intent to deliver.

Moreover, the trial court instructed the jury that it could only consider the other-acts evidence for the limited purposes of determining whether defendant "knew what the things found in his possession were," whether he acted purposefully, whether he used a plan or scheme that he had previously used, and whether defendant committed the crimes with which he was charged. The jury was expressly instructed that the other-acts evidence could not be considered for any other purpose. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). On this record, defendant has not established that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice.

Because the challenged evidence was offered for proper nonpropensity purposes, was logically relevant to contested issues, and was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion by admitting the other-acts evidence under MRE 404(b).

## C. PROSECUTORIAL ERROR

Defendant next contends that the prosecution committed error[3] by eliciting inadmissible other-acts testimony and arguing facts not in evidence during its closing argument. Defendant also

---

[3] Defendant characterizes this claim as "prosecutorial misconduct," but the more appropriate characterization is "prosecutorial error." "Although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (cleaned up).

asserts that trial counsel's failure to object to that testimony and argument constituted ineffective assistance.

We review defendant's unpreserved claims of prosecutorial error for plain error affecting substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," which occurs when "the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). Even if those requirements are met, reversal is warranted only if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Spaulding*, 332 Mich App 638, 655-656; 957 NW2d 843 (2020) (citation omitted). This Court reviews de novo constitutional questions of law and reviews findings of fact for clear error. *Id*. at 656. When, as here, an ineffective assistance claim is unpreserved, this Court's review is limited to errors apparent on the record. *Id*.

The test for prosecutorial error is whether the defendant has been denied a fair trial. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). The defendant bears the burden of demonstrating that the error resulted in a miscarriage of justice. *Brown*, 279 Mich App at 134. Claims of prosecutorial error "are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

## 1. IMPROPER TESTIMONY

Defendant first argues that the trial court plainly erred by allowing the prosecution to elicit inadmissible testimony suggesting that he was known to law enforcement and had previously been the subject of narcotic investigations. He further contends that the prosecution improperly elicited testimony regarding uncharged offenses.

A prosecutor may not deliberately elicit inadmissible character or other-acts evidence to secure a conviction. *People v Haywood*, 209 Mich App 217, 227-228; 530 NW2d 497 (1995). However, "[u]nresponsive answers from witnesses are generally not prosecutorial error." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 428; 884 NW2d 297 (2015); see also *Haywood*, 209 Mich App at 228.

Defendant identifies several instances in which the prosecution purportedly elicited inadmissible testimony. First, the prosecution asked Officer Merkins to explain to the jurors how he became involved in the investigation into defendant, and Officer Merkins answered:

*A*. In regards to this, it was actually kind of by accident how I originally found out.

[Defendant's] kind of been a target since I had gotten out there through different detectives telling me of him, through different C.I.'s speaking with me and his name coming up, but—

*Q*. And real quick, when we talk about the warrant, I believe it's a misdemeanor warrant that you were looking for him for, correct?

*A*. Correct.

*Q*. Okay. That's fine.

*A*. But as far as this incident, I was able to locate a report from I believe it was August of 2021. It was—like I said, I found this report by accident by searching for a different suspect . . . .

And in September of 2021 I was advised by the Detective Sergeant of the Violent Crimes Unit that also—

At that time, defense counsel objected on the basis of hearsay. After the trial court overruled the objection, the officer stated that he was advised by the detective sergeant that defendant had a misdemeanor warrant.

Viewed in context, the prosecutor's question merely asked the officer to explain how he became involved in the investigation. The officer's reference to defendant being "a target" and his name arising through detectives and confidential informants was volunteered as part of a narrative response. The prosecutor immediately interrupted that line of testimony and redirected the witness to the misdemeanor warrant that precipitated this investigation. The question that prompted the nonresponsive answer was clearly intended to elicit relevant testimony concerning the officer's investigation. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. Accordingly, defendant has not established error relative to that testimony, let alone plain error.

Nor has defendant established plain error with respect to testimony from retired Muskegon Police Department Officer Clay Orrison, who testified regarding the 2000 arrest. During his direct examination, the prosecution asked the officer to describe the contact he had with defendant during that arrest. In his answer, Officer Orrison stated that defendant "has always been quite a large man," which, defendant claims, implied that he was known to law enforcement. But the question to which the officer was responding did not ask about his past interactions or knowledge of defendant; it was specifically focused on the contact he had with defendant on the date of the 2000 arrest. That nonresponsive testimony, prompted by the prosecution's good-faith effort to admit evidence of the 2000 arrest that the trial court already deemed admissible, does not constitute prosecutorial error. Accordingly, defendant has not established plain error relative to the admission of that testimony.

-10-

Defendant asserts that "[t]he prejudice caused by the prosecution's elicitation of other acts testimony was exacerbated by the prosecution's use of non-charged drugs found in the home as evidence against" him, specifically marijuana and hydrocodone pills called "Norco." It is unclear whether defendant intends that to be an independent basis for his claim of prosecutorial error or if it is merely an argument as to prejudice. Assuming for the sake of argument that he intends this as an independent basis for his prosecutorial-error claim, his argument fails.

As an initial matter, evidence concerning the items recovered during the execution of the search warrant was part of the same transaction and investigation that gave rise to the charged offenses. Evidence is not rendered inadmissible merely because it incidentally reflects uncharged misconduct. Michigan courts have long recognized that the prosecution is not required to present a fragmented or incomplete account of the events surrounding the charged crime. See *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978) (recognizing the admissibility of evidence necessary to present the complete story of the offense); *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996) (holding that evidence explaining the circumstances of the charged offense is admissible when it forms an integral and natural part of the events surrounding the crime). Here, the marijuana and uncharged narcotics were part of the factual context supporting the prosecution's theory that defendant was engaged in large-scale drug trafficking. The prosecution was therefore entitled to present evidence describing what officers found during the execution of the warrant. See *id*.

Moreover, prosecutors are permitted to introduce evidence that is relevant to proving the charged offense even if the evidence incidentally reflects uncharged criminal conduct. *People v Jackson*, 498 Mich 246, 262-263, 267; 869 NW2d 253 (2015). In this case, the existence of additional controlled substances within the residence was relevant to the prosecution's theory that defendant was engaging in drug trafficking, not mere personal use. Testimony regarding the uncharged substances therefore helped place the officers' observations in context and aided the jury's evaluation of whether the large quantities of fentanyl and cocaine discovered in the residence were possessed with the intent to distribute them. Defendant has not established plain error relative to that testimony.

## 2. CLOSING ARGUMENT

Defendant also argues that the prosecution argued facts not in evidence and mischaracterized testimony during closing argument. Specifically, defendant challenges (1) the prosecutor's suggestion that he was on his way to deliver narcotics after receiving a telephone call or text message at the time of the arrest and (2) the prosecutor's remarks regarding Shekela's trial testimony.

"Generally, prosecutors are accorded great latitude regarding their arguments and conduct." *Cooper*, 309 Mich App at 90 (cleaned up). A prosecutor may argue the evidence and reasonable inferences arising from it but must avoid making improper or prejudicial remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). Further, a prosecutor may not argue facts unsupported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). A prosecutor may not vouch for the credibility of his or her own witnesses nor imply special knowledge concerning a witness's truthfulness but "may comment on his or her own

-11-

witnesses' credibility, especially when credibility is at issue." *People v Bennett*, 290 Mich App 465, 478; 802 NW2d 627 (2010).

In this case, defendant asserts that the prosecution argued facts unsupported by the record when it argued to the jury that he was "on his way to make a delivery" at the time of the traffic stop, stating: "Maybe he got a call on his phone or a text on his phone or whatever saying: You know, I need—I need 18 grams of crack. Come meet me." The prosecutor acknowledged that "we don't have any evidence from any phones," but asked the jury, "Why else would he take that amount of crack cocaine with him[?]"

Defendant has not established plain error relative to that argument. At the time of the traffic stop, he was found to possess 18 grams of crack cocaine and a large amount of cash in small denominations. Officer Merkins explained that lottery tickets, which are frequently folded into "bindles" and used to package drugs, were found scattered throughout the car. From that evidence, it was reasonable to infer that defendant was on his way to deliver drugs at the time of the traffic stop. And because the prosecution may argue the evidence and reasonable inferences arising from it, defendant has not established error relative to that argument. See *Bahoda*, 448 Mich at 282-283.

Defendant also challenges certain remarks regarding Shekela's testimony. Shekela testified at trial that she was married, though her husband did not live with her, and she asserted that some of the clothing in her bedroom actually belonged to her husband, who was similar in stature to defendant. But an officer who interviewed Shekela during the execution of the search warrant testified that Shekela did not mention that she was married and reported that she and defendant shared the bedroom in which most of the narcotics were found.

In its closing argument, the prosecution argued that Shekela did not tell police that she was married and never mentioned her husband until trial, asserting that the only reason she was mentioning her husband at trial was because "she's scared or because she just wants to protect" defendant:

> And this last minute thing from [Shekela] about this other guy that no one has ever heard before. She never said anyone [sic] before is because she's scared or because she just wants to protect him.

> And it should be clear to you because when she comes in here and you got family and friends sitting out here (indicating) and before she comes in here she admits she told us she's afraid someone is going to record her, and that's because she's afraid. Use your common sense. She's going to appear, from recording of her face, on some snitch, you know, thing on social media where they're going to use it against her in some way.

> That is—You know, people say that drugs sometimes will or—or drug sales, narcotics trafficking, is not a victim crime. Well, they're right technically. You know, I have a victim that took the stand for you and testified for you.

Defendant contends that the prosecution's assertions regarding Shekela's apparent fear of being recorded were both unsupported by the record and plainly contradicted by Shekela's own

testimony. He also asserts that the prosecution mischaracterized Shekela's testimony concerning her husband and improperly expressed a personal belief that Shekela lied.

Viewed in context, the challenged remarks constituted permissible commentary on Shekela's credibility rather than improper assertions of personal knowledge about her truthfulness. Shekela expressed concern in her testimony about being recorded and, although she asserted that those concerns were attributable to her fear of public speaking, the prosecution invited the jury to infer that her reluctance stemmed from concerns about being publicly identified as a witness in a narcotics case. That inference was reasonable. The prosecution did not expressly argue that defendant threatened or intimidated Shekela; rather, it asked the jury to draw an inference from Shekela's demeanor and testimony and from the jurors' own common sense.

Further, the prosecutor's characterization of the testimony concerning Shekela's husband as a "last minute thing" was a fair comment on the timing and credibility of that testimony. A detective sergeant from the Muskegon Police testified that he questioned Shekela during the execution of the warrant, and she did not mention that she was married. The prosecutor could therefore argue that the jury should consider whether Shekela's trial testimony concerning her husband and the ownership of the men's clothing found in her home was credible in light of the timing of that disclosure. The prosecution did not assert personal knowledge that Shekela was lying. It merely asked the jury to draw its own reasonable conclusions from the evidence—namely, the timing of Shekela's disclosures regarding her husband. Such an argument is permissible. *Bennett*, 290 Mich App at 478.

Moreover, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence" and that the jurors alone were responsible for evaluating witness credibility. Jurors are presumed to follow their instructions. *Graves*, 458 Mich at 486. Accordingly, defendant has not established plain, outcome-determinative error relative to the prosecutor's closing argument.

## 3. INEFFECTIVE ASSISTANCE

Defendant also argues that trial counsel was ineffective for failing to object to the purportedly erroneous testimony and argument. But defendant has not established the underlying claims of prosecutorial error; accordingly, any objection would have been futile. Because counsel is not ineffective for failing to raise a futile objection, *Isrow*, 339 Mich App at 532, defendant has not established entitlement to relief on the basis of ineffective assistance of counsel.

## D. EXPERT TESTIMONY

Defendant next argues that the trial court erred by qualifying Muskegon Police Department Detective Sergeant Tim Titus as an expert witness in narcotics investigations and by permitting him to offer inadmissible drug-profile testimony. Defendant preserved his challenge to the detective sergeant's qualification by timely objecting, but he did not object to the testimony he now challenges as impermissible drug-profile evidence, leaving that argument unpreserved. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). We review his challenge to the trial court's decision to qualify the expert for an abuse of discretion. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). Questions concerning the proper interpretation of the Michigan

Rules of Evidence are reviewed de novo. *Dobek*, 274 Mich App at 93. We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *Thorpe*, 504 Mich at 252.

## 1. QUALIFICATION

Under MRE 702, a witness may be qualified as an expert by virtue of his or her "knowledge, skill, experience, training, or education" if the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. Michigan courts have long recognized that practical experience may provide an adequate foundation for expert qualification. *People v Whitfield*, 425 Mich 116, 123-124; 388 NW2d 206 (1986). Further, experienced narcotics officers may be qualified as experts concerning drug trafficking practices, including the significance of quantities of drugs, packaging materials, and cash. *People v Williams (After Remand)*, 198 Mich App 537, 541-542; 499 NW2d 404 (1993); see also *Murray*, 234 Mich App at 53-54.

The record establishes that Detective Sergeant Titus possessed extensive qualifications in the field of narcotics investigations. He testified that he had 24 years of experience in law enforcement, including more than a decade assigned to WEMET. He had participated in hundreds of narcotics investigations, drug-related arrests, search-warrant executions, and controlled purchases of narcotics. Additionally, he completed specialized narcotics training through the Michigan State Police, including basic narcotics investigations, advanced narcotics investigations, raid school, and surveillance training.

The trial court did not abuse its discretion by qualifying Detective Sergeant Titus as an expert witness. There is "no serious question that drug-related law enforcement is a recognized area of expertise." *Williams*, 198 Mich App at 542. The detective sergeant's extensive narcotics-investigation experience and specialized training provided a sufficient basis for the court to conclude that he possessed knowledge beyond that of an ordinary person. The fact that he had previously testified as an expert only once did not render him unqualified. Defendant has not established an abuse of discretion relative to Detective Sergeant Titus's qualification as an expert witness.

## 2. DRUG-PROFILE EVIDENCE

Drug-profile evidence has been described as "an informal compilation of characteristics often displayed by those trafficking in drugs." *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995) (quotation marks and citation omitted). Such evidence may not be admitted as substantive proof of guilt because there is a danger that the jury will convict on the basis that the defendant fits a profile rather than because the prosecution proved the charged offenses. *Murray*, 234 Mich App at 53-54.

However, not all testimony concerning characteristics associated with drug trafficking constitutes improper profile evidence. This Court has repeatedly recognized that narcotics investigations frequently involve evidence whose significance is not readily apparent to a layperson. See *Williams*, 198 Mich App at 542; *People v Ray*, 191 Mich App 706, 707-708; 479 NW2d 1 (1991). Consequently, experienced narcotics officers may testify concerning the practices of drug traffickers and the significance of evidence recovered during a narcotics

investigation when such testimony assists the jury in understanding the evidence. *Williams*, 198 Mich App at 541-542; *Ray*, 191 Mich App at 707-708.

In *Murray*, this Court explained that the critical distinction is whether the expert testimony is offered to explain the significance of evidence or whether it is offered as substantive proof that the defendant is guilty because he fits a profile. *Murray*, 234 Mich App at 53-55. The Court identified several factors relevant to that determination, including whether the expert merely describes general drug-trafficking practices, whether the expert expressly compares the defendant to a drug-dealer profile, whether the prosecutor argues that the defendant is guilty because he matches the profile, and whether the profile testimony is used as substantive evidence of guilt. *Id.* at 53-56.

Detective Sergeant Titus's testimony fell within the permissible side of that distinction. He did not merely describe general characteristics of drug dealers. Rather, he testified regarding differences he had observed between narcotics users and narcotics traffickers, including the quantities of drugs typically possessed, the significance of cash in various denominations, and the significance of scales and other distribution-related evidence. That testimony was offered to explain why certain items that may appear innocuous to a layperson, such as scales, demonstrate that defendant intended to distribute the drugs in his possession.

This case is therefore materially different from situations in which profile evidence effectively becomes substantive proof of guilt. See *Hubbard*, 209 Mich App at 239-243. The prosecution did not merely present a checklist of drug-dealer characteristics and ask the jury to conclude that defendant was guilty because he satisfied them. Rather, Detective Sergeant Titus used his specialized knowledge and training to explain why certain evidence recovered during the investigation may be significant to narcotics investigators. Such testimony is routinely permitted under Michigan law. See *Williams*, 198 Mich App at 541-542; *Ray*, 191 Mich App at 707-708.

Moreover, the trial court instructed the jury that the detective sergeant's "training or experience concerning other drug cases . . . is not to be used to determine whether the Defendant committed the crime charged in this case." Jurors are presumed to follow their instructions. *Graves*, 458 Mich at 486. Defendant has not established plain, outcome-determinative error relative to Detective Sergeant Titus's testimony.

## E. CUMULATIVE ERROR

Defendant argues that the cumulative effect of the foregoing errors deprived him of a fair trial. But defendant has not established any of those claims of error; there is therefore no accumulation of errors to evaluate. See *Dobek*, 274 Mich App at 106 ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal."); *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999) ("Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found.").

## F. SENTENCING

Finally, defendant submits that he is entitled to resentencing because the trial court impermissibly sentenced him pursuant to a blanket sentencing policy.

A criminal defendant has a due process right to an individualized sentence based on the particular facts of the offense and the offender. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). Whether a defendant was sentenced pursuant to an impermissible blanket sentencing policy, then, presents a question of constitutional law, which this Court reviews de novo. See *Hammerlund*, 504 Mich at 451. To the extent that resolution of this issue depends on the trial court's statements and conduct at sentencing, this Court reviews the record to determine whether the sentencing court impermissibly limited its discretion through adherence to a blanket sentencing policy. See *People v Pennington*, 323 Mich App 452, 466-469; 917 NW2d 720 (2018). A sentencing court's use of a blanket sentencing policy is fundamentally inconsistent with the requirement of individualized sentencing and violates due process. *Id*. at 468-469. When the record demonstrates that a sentencing judge replaced individualized discretion with adherence to a policy, resentencing is required. *Id*. at 466-469.

Because a defendant is constitutionally entitled to an individualized sentence based on the particular facts surrounding the offense and the offender, a sentencing court may not abdicate its sentencing discretion through adherence to a predetermined sentencing policy. See *People v Chapa*, 407 Mich 309, 311; 284 NW2d 340 (1979). There, our Supreme Court ordered resentencing where the trial judge stated that he felt obligated to impose a sentence in accordance with a county-wide program that mandated prison terms for heroin dealers. *Id*. at 310-311. The *Chapa* Court explained that "[w]hen the record shows that a local policy has replaced the discretion of a sentencing judge, reversible error has been committed." *Id*. at 309.

This Court reiterated that principle in *Pennington*. In that case, the trial court sentenced the defendant to the highest sentence within the guidelines minimum range pursuant to its practice of sentencing defendants who go to trial to the top of the guidelines range. *Pennington*, 323 Mich App at 466. The *Pennington* Court held that "a policy of sentencing all defendants who go to trial to the top of the sentencing guidelines range is fundamentally inconsistent with the principle of individualized sentences." *Id*.

In this case, defendant's guidelines minimum range was 171 to 570 months for each offense. The Department of Corrections agent who prepared the PSIR recommended a below-guidelines sentence of 135 to 138 months' imprisonment with credit for time served. At sentencing, the trial court noted the below-guidelines recommendation and stated, "I don't sentence below the guidelines. So I can't follow the recommendation in this case." It therefore sentenced defendant to a within-guidelines sentence of 180 to 600 months' imprisonment.

The record therefore reflects more than a mere rejection of the Department of Corrections' sentencing recommendation. Rather, the trial court expressly stated that it could not follow the recommendation because it did not sentence below the guidelines. Unlike a sentencing court that declines to sentence below the guidelines based on the particular facts of the case, the trial court's remarks here indicate that it declined to consider a below-guidelines sentence pursuant to a categorical policy applicable to all defendants.

On appeal, the prosecution argues that the trial court merely expressed a preference for within-guidelines sentences and that defendant has failed to establish the existence of a broader sentencing practice consistent with that preference. That argument is unpersuasive. In both *Chapa* and *Pennington*, the dispositive question was not whether the sentencing court had applied the

same policy in numerous cases, but whether the court had replaced individualized sentencing discretion with adherence to a predetermined rule. Here, the trial court stated both the policy itself—"I don't sentence below the guidelines"—and identified that policy as the reason it would not follow the sentencing recommendation. Those remarks indicate that the court considered itself bound by a self-imposed policy against sentencing defendants below the guidelines minimum range, thereby limiting its discretion in imposing sentences. See *Chapa*, 407 Mich at 310-311.

To be sure, a sentencing court remains free to conclude that a within-guidelines sentence is the most proportionate sentence in a particular case. Likewise, a court may determine that a recommendation for a downward departure lacks merit. Indeed, under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017) (cleaned up). But a sentencing court may not refuse to consider a below-guidelines sentence based on a blanket policy that categorically forecloses such consideration. Such a policy is fundamentally inconsistent with the principle of individualized sentencing recognized in *Chapa* and *Pennington*. Because the trial court's own statements demonstrate that it declined to consider the Department of Corrections' recommendation pursuant to a blanket policy rather than an individualized assessment of defendant and the offense, defendant is entitled to resentencing.[4]

We note that a PSIR's recommended sentence is no more controlling on a trial judge's sentence than the arguments of defense counsel or the prosecutor. It is the duty of a judge to impose sentence in all criminal cases they are assigned. They must do so fairly and in accordance with the statutes of Michigan, the binding appellate decisions of this state and the decisions of the United States Supreme Court. The difficulty on the record before us is the sentencing judge stated, "I don't sentence below the guidelines," not that a below-guidelines sentence was recommended.

Upon resentencing, the trial court, prior to imposing sentence, should order and consider an updated PSIR, provide the defendant with the right of allocution, and consider the arguments of both the defense and prosecution. The court should then impose the sentence it believes is appropriate under the law, considering all the facts and circumstances of the case. The sentence may be lower, exactly the same, or higher than the sentence previously imposed, depending on the entirety of the record then before the court.

## III. CONCLUSION

We affirm defendant's convictions but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[4] Defendant also argues that his within-guidelines sentences violate the principle of proportionality. Because we vacate those sentences, we need not reach that issue.